UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - MOTION FOR DEFAULT JUDGMENT (Dkt. 21, filed on May 11, 2022)

## I.   INTRODUCTION

On September 28, 2021, plaintiff United States Securities and Exchange Commission ("SEC") filed this action against defendants C3 International, Inc., ("C3"), Steele Clark Smith III ("Steele Smith"), and Theresa Smith (collectively, "defendants"). Dkt. 1 ("Compl."). The complaint brings five claims for relief: (1) Fraud in Connection with the Purchase or Sale of Securities, in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5 (against C3 and Steele Smith); (2) Fraud in the Offer or Sale of Securities in violation of Sections 17(a)(1), (2), and (3) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77(q)(a) (against C3 and Steele Smith); (3) Aiding and Abetting Violations of Section 17(a) of the Securities Act (against Theresa Smith); (4) Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder (against Theresa Smith); and (5) Unregistered Offer and Sale of Securities Violations of Sections 5(a) and 5(c) of the Securities Act (against all defendants). Id. ¶¶ 66-75.

On January 7, 2022, after having received no response or answer from defendants, the SEC requested the Clerk of the Court enter default against defendants pursuant to Federal Rule of Civil Procedure ("Rule") 55(a). Fed. R. Civ. P. 55(a). Dkt. 17. Pursuant to the SEC's request, the Clerk entered default on January 7, 2022. Dkt. 18 ("Entry of Default").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

On March 24, 2022, the Court ordered the SEC to show cause as to why this action should not be dismissed for lack of prosecution. Dkt. 19. On March 29, 2022, the SEC filed a response. Dkt. 20 ("Response"). On May 11, 2022, the SEC filed the instant motion for default judgment. Dkt. 21 ("MDJ").

On July 11, 2022, the Court held a hearing. Counsel Derek S. Bensten and Stephen T. Kaiser appeared on behalf of plaintiff SEC. Defendants Steele Clark Smith, III and Theresa Smith (the "Smith defendants") appeared on behalf of themselves. During the hearing, the Smith defendants requested time to contest the SEC's motion for default judgment and to obtain counsel. The Court withheld entering default judgment contingent on the defendants filing responsive pleadings. Dkt. 25.

On September 4, 2022, the Smith defendants filed a memorandum in opposition to the plaintiff's motion for default judgment that denies the factual allegations in plaintiff's complaint. Dkt. 27.

On September 9, 2022, the Court acknowledged receipt of the Smith defendants' "answer" and directed it be lodged as a "responsive pleading." Dkt. 29. The Court then directed defendants to file a brief setting forth why entry should be put aside. Id.

On September 30, 2022, the Smith defendants filed their supplemental memorandum. Dkts. 33, 36-1.

On October 7, 2022, plaintiff filed a reply restating its request for default judgment as to all three defendants. Dkt. 37.

On October 26, 2022, the Smith defendants filed a "further supplemental memorandum" in opposition to plaintiff's motion for default judgment. Dkt. 38.

To date, C3, as a corporate entity, has not appeared or responded in any way.

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.  BACKGROUND

Defendant C3 is a private, California-based corporation, formed in November 2011, with its purported principal place of business in Garden Grove, California. Id. ¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

10. Defendant Steele Smith is a current resident of Garden Grove, California, and is listed as the CEO, Secretary, CFO, and Director of C3, according to the certificate filed with the California Secretary of State. Id. ¶ 11. Defendant Theresa Smith, wife of Steele Smith, is a current resident of Garden Grove, California, and is the co-founder and President of C3. Id. ¶ 12. Additionally, in October 2010, Steele Smith and Theresa Smith formed the related entity C3 Patients Association ("C3PA"), a nonprofit member association organized for the purpose of providing members with medical marijuana. From approximately 2010 to 2015, C3PA sold cannabis products and billed insurance companies for reimbursement. Id. ¶ 13.

The SEC's complaint alleges that from approximately October 2011 through November 2019, defendants raised approximately 2 million dollars from more than 40 investors by selling stock in C3 through Steele Smith's material misrepresentations and omissions regarding the company's business and its cannabis pill called Idrasil. Compl. ¶ 5. C3's website claims that Idrasil was either patented or patent pending, but Steele Smith had only filed a provisional patent application. Id. ¶¶ 18-21. Steele Smith and C3 stated in business summaries that C3 would use investment proceeds for business purposes, but Steele Smith and Theresa Smith diverted a substantial portion of those proceeds for their personal living expenses. Id. ¶¶ 25-28. Steele Smith and C3 made statements disclosing Steele Smith's background and history but omitted that he was a convicted felon; he was convicted of conspiracy to manufacture at least 1000 marijuana plants in 2012 in United States v. Smith, 8:07-cr-00264-CJC (C.D. Cal.). Compl. ¶ 30-31.

Moreover, the complaint alleges that Steele Smith and C3 represented that Idrasil was reimbursable by most health insurance companies in California, but fewer than half of insurance companies accepted Idrasil for payment. Id. ¶¶ 32-33. Further, Steele Smith and C3 represented that pharmaceutical companies had shown interest in purchasing C3 and that C3 would, according to Smith's financial projections, achieve at least $4.6 million in gross revenue the next year. However, no big pharmaceutical companies had responded to Steele Smith and C3PA had never made more than $57,000 in a single year from Idrasil. Id. ¶¶ 36-40. When questioned by investors about when they would receive money from C3, Steele Smith represented that C3 had a building in escrow and that as soon as the deal closed, he would have the funds to buy out the investors. However C3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

never had a building in escrow nor enough cash to go into escrow for the types of buildings that Steele Smith described. Id. ¶¶ 41-43.

Further, the SEC's complaint alleges that Theresa Smith aided and abetted Steele Smith's and C3's securities fraud violations because she was a co-founder of C3, was C3's president, and managed the day-to-day operations of C3 and C3PA. Id. ¶¶ 45-46.

Last, the SEC's complaint alleges that defendants offered and sold C3 stock without filing a registration statement with the SEC or otherwise satisfying an exemption. Id. ¶ 8. Beginning in at least October 2011, and continuing through at least November 2019, defendants offered and sold C3 stock to investors. However, defendants never filed a registration statement with the SEC for the offer and sale of the C3 securities. Id. ¶¶ 47, 50.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the plaintiff does not seek a sum certain, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55.

As a general rule, cases should be decided on the merits as opposed to by default, and, therefore, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." Judge William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial ¶ 6:11 (The Rutter Group 2015) (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). Granting or denying a motion for default judgment is a matter within the court's discretion. Elektra Entm't Grp., Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D. Cal. 2005); see also Sony Music Ent. Inc. v. Elias, No. CV03-6387DT(RCX), 2004 WL 141959, at *3 (C.D. Cal. Jan. 20, 2004).

The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

(7) the strong policy favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986); see also Elektra, 226 F.R.D. at 392.

"Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2." Harman Int'l Indus., Inc. v. Pro Sound Gear, Inc., No. 2:17-cv-06650-ODW-FFM, 2018 WL 1989518, at *1 (C.D. Cal. Apr. 24, 2018). Accordingly, when an applicant seeks a default judgment from the Court, the movant must submit a declaration specifying: "(a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) That notice has been served on the defaulting party, if required by [Federal Rule of Civil Procedure] 55(b)(2)." See C.D. Cal. L.R. 55-1. Under Local Rule 55-2, "where an application for default judgment seeks unliquidated damages, the party seeking entry of the default judgment is obligated to serve notice of the application on the defaulting party regardless of whether the latter has appeared in the action." Halicki v. Monfort, No. 2:08-cv-00351-PSG-JTL, 2009 WL 10672966, at *2 (C.D. Cal. Nov. 19, 2009) (citing C.D. Cal. L.R. 55-2).

## IV.  DISCUSSION

### A.  Procedural Requirements

To satisfy the procedural requirements for entry of default judgment, the plaintiff must follow the "requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2." Harman Int'l Indus., 2018 WL 1989518, at *1. Here, the procedural requirements for default judgment are satisfied because (1) the SEC served C3, Steele Smith, and Theresa Smith with the summons and complaint; (2) the clerk entered default against C3, Steele Smith, and Theresa Smith; and (3) the SEC submitted a declaration establishing that C3, Steele Smith, and Theresa Smith are not minors or incompetent persons, and are not in military service, such that the Servicemembers Civil Relief Act does not apply. Dkt. 21-2 ("Declaration of SEC's Counsel Derek S. Bentsen") ¶¶ 1-4. Notice of the SEC's motion for default judgment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

was properly served on defendants pursuant to Local Rule 55-2. Id. at 2-3 ("Proof of Service").

Accordingly, the SEC has satisfied the procedural requirements for default judgment under the Federal and Local Rules. The Court now proceeds to the SEC's motion for default judgment.

### B. Default as to the Smith Defendants Should Be Set Aside

As described above, the Smith defendants appeared at the July 11, 2022 hearing and filed two responsive filings on September 4, 2022, and September 30, 2022. Based on the fact that the Smith defendants have appeared pro se and filed their "answer" to plaintiff's complaint, default as to them should be set aside. The Court hereby sets a status conference for December 12, 2022 at 11am.

### C. Default Judgment as to Defendant C3 Is Appropriate Pursuant to Application of the Eitel Factors

As to defendant C3, however, the Court finds that default judgment against it is appropriate, in light of the multiple admonitions the Court gave it to secure counsel pursuant to local rule requirements. See dkts. 25, 29. Accordingly, the Court now applies the Eitel factors as to defendant C3.

#### 1. Risk of Prejudice to Plaintiff

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); see also Eitel, 782 F.2d at 1471-72. Courts favor entry of default judgment when, absent entry of default judgment, plaintiffs "will likely be without other recourse for recovery." PepsiCo, 238 F. Supp. 2d at 1175. Here, in the absence of default judgment, the SEC "would have no way to enforce the Securities Act or the Exchange Act against defaulting defendants." SEC v. Pedras, No. CV 13–7932 GAF (MRWx), 2014 WL 12597332, at *4 (C.D. Cal. Apr. 16, 2014). Because defendant has elected not to take part in the litigation, the Commission will be unable to fulfill its mandate to protect the investing public in the absence of a default judgment. SEC v. Lion Capital Management, No. CV 12–05166 WHA, 2013 WL 5945081 (N.D. Cal. Nov. 1, 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

Accordingly, the first Eitel factor weighs in favor of entering default judgment.

   2. **Sufficiency of the Complaint and the Likelihood of Success on the Merits**

Courts often consider the second and third Eitel factors together. See PepsiCo, 238 F. Supp. 2d. at 1175; HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 941 (D. Ariz. 2013). The second and third Eitel factors assess the substantive merits of the movant's claims and the sufficiency of its pleadings, which "require that a [movant] state a claim on which [it] may recover." PepsiCo, 238 F. Supp. 2d at 1177 (quotation marks omitted); see also Danning v. Lavine, 572 F. Supp. 2d 1386, 1388 (9th Cir. 1978) (stating that the issue is whether the allegations in the pleading state a claim upon which plaintiff can recover). For the purposes of default judgment, all well-pleaded allegations in the complaint, except for those relating to damages, are assumed to be true. Geddes v. United Fin. Grp., 559 F. 2d 557, 560 (9th Cir. 1977). However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F. 2d 1261, 1267 (9th Cir. 1992).

   a. Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act

Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder make it unlawful, "in the offer or sale of securities" or "in connection with the purchase or sale of a security," to engage in any fraudulent conduct. 15 U.S.C. §§ 77b(a)(1). To establish a violation of Section 17(a)(2) of the Securities Act, the SEC must prove, in connection with the offer or sale of a security: (1) a material misstatement or omission; (2) made with at least negligence; (3) the receipt of money or property by means thereof; (4) by means of interstate commerce. See SEC v. GLT Dain Rauscher, Inc., 254 F.3d 852 at 856 (9th Cir. 2001). Similarly, to establish a violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder, the SEC must show that a defendant, in connection with the purchase or sale of a security: (1) made a material misrepresentation or omission; (2) with scienter; (3) in interstate commerce. See 17 C.F.R. § 240.10b-5(b); see also SEC v. Platforms Wireless Intern. Corp., 617 F.3d 1072, 1092 (9th Cir. 2010).

Additionally, Section 17(a)(1) of the Securities Act prohibits any person, in the offer or sale of any security, from employing any device, scheme, or artifice to defraud,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

and section 17(a)(3) prohibits any person from engaging in any transaction, practice, or course of business which operates, or would operate, as a fraud or deceit upon the purchaser. 15 U.S.C. §§ 77q(a)(1), (3). Likewise, Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder make it unlawful for any person to employ, in connection with the purchase or sale of any security, any device, scheme, or artifice to defraud, or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. 17 C.F.R. § 240.10b-5(a), (c).

The SEC's allegations are sufficient to establish that defendant violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by, in connection with the purchase or sale of a security, making misrepresentations of material facts with scienter and by means of interstate commerce.

First, defendant C3's conduct involved the sale of securities. For the purposes of the Securities Act, stocks are considered "securities." See 15 U.S.C. § 77(b)(1). Here, defendant offered to sell to investors "securities" within the meaning of the Securities and Exchange Act.

Second, defendant's conduct satisfies the material misrepresentation element under the Securities and Exchange Act. C3 made numerous misrepresentations including: (1) representing that C3 had a patent (or a pending one) for Idrasil when only an application for a provisional patent had been filed, compl. ¶¶ 19-20; (2) representing that investor funds would be used for business purposes, but instead using a portion of the funds for personal expenses, id. ¶ 25; (3) representing that most health insurance companies would pay for Idrasil when they would not pay, id. ¶¶ 32-34; and (4) representing that investors would receive returns on their investments through dividends until a large pharmaceutical company purchased C3, but no dividends were paid and there were no prospective buyers of C3. Id. ¶¶ 36-37.

Defendant's misrepresentations were material. A fact is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of the information made available. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976). Here, reasonable investors would have wanted to know that Idrasil did not have a patent, that C3 misused the investor funds, that C3 did not have the prospective purchasers as stated, and that most health insurance companies would not pay for Idrasil.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

Third, defendant C3 acted with scienter. As was previously discussed, a violation of Section 17(a)(2) of the Securities Act requires only negligence. A violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, however, requires at least "knowing or reckless conduct," without a showing of "willful intent to defraud." Vernazza v SEC, 327 F.3d 851, 860 (9th Cir. 2003). Reckless conduct is that which demonstrates an extreme departure from the standards of ordinary care and presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it. Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir. 1990). The Court finds that, for the purposes of default judgment as to C3, the SEC has sufficiently alleged that Steele Smith knew, or was reckless in not knowing, that C3's offering documents, website, and investor communications contained false and misleading statements. Accordingly, Steele Smith's scienter can be imputed to C3 because a corporation is responsible for a corporate officer's fraud committed within the scope of his employment. In re ChinaCast Educ. Corp. Securities Litigation, 809 F.3d 471, 476 (9th Cir. 2015).

Last, defendant's actions involved means or instruments of interstate commerce because C3 solicited investors from Oregon, Tennessee, and Maryland. Compl. ¶ 47. Accordingly, the Court finds defendant C3 liable for fraud under Sections 17(a) and 10(b).

  b. Section 5 of the Securities Act

Section 5 of the Securities Act makes it unlawful for any person, directly or indirectly, to offer to sell or offer to buy a security by means of interstate commerce without a registration having been filed or in effect. 15 U.S.C. §§ 77e(a), (c). To establish a violation, the SEC must therefore show that the defendants offered or sold unregistered securities in interstate commerce. SEC v. Murphy, 626 F.2d 633, 640-641 (9th Cir. 1980). Section 5 liability requires a defendant to have undertaken a significant role in the transaction, that is, when one is both a necessary participant and a substantial factor in the sales transaction. SEC v Phan, 500 F.3d 895, 906 (9th Cir. 2007); see also Murphy, 626 F.2d at 648, 652. The Ninth Circuit has interpreted this to mean that but for the defendant's participation, the transaction would not have taken place. See Murphy, 626 F.2d 633 at 651-652.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

Here, defendant C3 offered and sold C3 stock without filing a registration statement with the SEC. Id. ¶ 8. C3 directly offered and sold C3 stock to investors. Id. ¶ 14. Therefore, the Court finds that defendant's conduct meets the "necessary participant" and "substantial factor" elements of a Section 5 violation.

Accordingly, the second and third Eitel factors weigh in favor of entering default judgment.

       3.     Sum of Money at Stake in the Action

Pursuant to the fourth Eitel factor, the Court balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." PepsiCo, 238 F. Supp. 2d at 1176; see also Eitel, 782 F.2d at 1471-72. "This determination requires a comparison of the recovery sought and the nature of the defendant's conduct to determine whether the remedy is appropriate." United States v. Broaster Kitchen, Inc., No 2:14-cv-09421-MMM-PJW, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015); see also Walters v. Statewide Concrete Barrier, Inc., No. 3:04-cv-02559-JSW, 2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted.")

Here, the SEC seeks an order for disgorgement of $1,463,860 misappropriated from investors along with $146,723 in prejudgment interest. See Dkt. 21-3 ("Declaration of SEC's Accountant and Certified Fraud Examiner Margaret Mary Vizzi") ¶¶ 5, 7. The Court finds that the amount of money sought by the SEC is proportional in relation to defendant's unlawful conduct. Defendant's conduct involved serious violations of federal securities law, and the Court may exercise its equitable powers to require a defendant in an SEC enforcement action to disgorge his ill-gotten gains. SEC v. Rind, 991 F.2d 1486, 1492 (9th Cir. 1993).

Accordingly, the Court finds that the fourth Eitel factor weighs in favor of entering default judgment.

       4.     Possibility of Dispute Concerning a Material Fact

The fifth Eitel factor considers the possibility that material facts are in dispute. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471-72. "Upon entry of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, 238 F. Supp. 2d at 1177.

Here, the SEC has "filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the court clerk entered default against" defendant. Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Therefore, no dispute has been raised regarding the material averments of the complaint, and the likelihood that any genuine issue may exist is, at best, remote." Id.

Accordingly, the fifth Eitel factor weighs in favor of granting the motion for default judgment.

     5.     **Possibility of Excusable Neglect**

The sixth Eitel factor considers whether the defendant's default may have been the product of excusable neglect. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471-72.

Here, the possibility of excusable neglect is remote. All defendants in the case were properly served with the complaint and summons. Decl. Bentsen ¶¶ 1-4. Additionally, notice of the SEC's motion for default judgment was properly served pursuant to Local Rule 55-2. Id. at 2-3.

Accordingly, the sixth Eitel factor weighs in favor of granting the motion for default judgment.

     6.     **Policy Favoring Decisions on the Merits**

Under the seventh Eitel factor, the Court considers the strong policy favoring decisions on the merits. See Eitel, 782 F.2d at 1472. However, the mere existence of Fed. R. Civ. P. 55(b) suggests that the seventh Eitel factor is not dispositive. PepsiCo, 238 F. Supp. 2d at 1177. When a defendant's failure to appear and respond "makes a decision on the merits impractical, if not impossible," default judgment is appropriate. Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Black Diamond Contracting Grp., Inc., No. S8:17-cv-00770-JLSDFM, 2017 WL 6496434, at *5 (C.D. Cal. Dec. 18, 2017). Because defendant C3's failure to appear or otherwise respond makes a decision on the merits in this case impractical if not impossible, the seventh Eitel factor does not preclude entry of default judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

        7.      <u>Conclusion Regarding the Eitel Factors</u>

Apart from the policy favoring decisions on the merits, all the remaining <u>Eitel</u> factors weigh in favor of default judgment, including the merits of the SEC's claims. <u>See</u> <u>Federal Nat. Mortg. Ass'n v. George</u>, No. 5:14-cv-01679-VAP-SP, 2015 WL 4127958, *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important <u>Eitel</u> factors.") (citation omitted). Therefore, weighing all the <u>Eitel</u> factors, the Court finds that entry of default judgment against defendant C3 is appropriate.

     **D.**      **Relief Sought by the SEC**

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (quotation marks omitted). The "[p]laintiff has the burden of proving damages through testimony or written affidavit." <u>See</u> <u>Bd. of Trustees of the Boilermaker Vacation Tr. V. Skelly, Inc.</u>, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Moreover, the movant seeking default judgment must prove the damages sought, and although the Court may hold an evidentiary hearing to determine the amount of damages, no hearing is necessary "if the amount of damages can be determined from definite figures contained in the documentary evidence or in detailed affidavits." <u>Bravado Int'l Grp. Merch. Servs., Inc. v. Quintero</u>, No. 2:13-cv-00693-SVW-SS, 2013 WL 12126750, at *4 (C.D. Cal. Nov. 27, 2013) (citation omitted).

Here, the SEC seeks several forms of relief. The Court addresses each form of requested relief in turn.

        1.      <u>Injunctive Relief</u>

The SEC seeks a judgment permanently enjoining C3 from future violations of the antifraud provisions of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, as well as future violations of the registration provisions of Sections 5(a) and (c) of the Securities Act. MDJ at 18. To obtain an injunction, the SEC must establish that there is a reasonable likelihood of future violations. <u>See</u> <u>SEC v. Murphy</u>, 626 F.2d 633, 655 (9th Cir. 1980) ("The existence of past violations may give rise to an inference that there will be future violations."). "In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations, and it considers factors such as:

    (1) the degree of scienter involved;

    (2) the isolated or recurrent nature of the infraction;

    (3) the defendant's recognition of the wrongful nature of his conduct;

    (4) the likelihood, because of defendant's professional occupation, that future violations might occur; and

    (5) the sincerity of his assurances against future violations."

SEC v. Murphy, 626 F.2d 633, 655 (9th Cir. 1980). The Court has previously found that defendant's conduct was an ongoing fraud perpetuated over many years. Further, defendant's failure to appear precludes any assurances against future violations and is evidence that defendant does not recognize the wrongful nature of its conduct. Therefore, the Court finds that an injunction permanently enjoining C3 from future violations of the antifraud provisions of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, as well as future violations of the registration provisions of Sections 5(a) and (c) of the Securities Act is appropriate. See S.E.C. v. Baccam, 2017 WL 5952168, at *9 (awarding injunctive relief by default, noting that the defendant "has not given any assurances against future violations, but to the contrary, declined to appear in this case").

    2.    <u>Disgorgement</u>

    Second, the SEC seeks disgorgement of the investors' lost funds. MDJ at 18. The SEC has authority to seek disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims." Liu v. SEC, 140 S. Ct. 1936, 1940 (2020). Additionally, "[d]isgorgement need be 'only a reasonable approximation of profits causally connected to the violation.'" Platforms Wireless Int'l Corp., 617 F.3d 1072, 1096 (2010) (quoting First Pac. Bancorp, 142 F.3d 1186, 1191) (1998)). Here, the SEC's calculation of the appropriate disgorgement is premised upon the evidence accumulated by SEC accountant and fraud examiner Margaret Mary Vizzi. Dkt. 21-3. The SEC has alleged that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

defendant C3 raised $1,914,017 through the fraudulent activities. Id. ¶ 5. The SEC's evidence thus presents a "reasonable approximation" of defendant's fraudulent activities.

In conjunction with its request for disgorgement, plaintiff requests prejudgment interest. MDJ at 23. Prejudgment interest may be awarded to ensure that the wrongdoer does not profit from the illegal activity. SEC v. Cross Financial Services, Inc., 908 F. Supp. 718, 734 (C.D. Cal. 1995). Indeed, an award of prejudgment interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity. SEC v. Moran, 944 F. Supp. 286, 295 (S.D.N.Y. 1996). The SEC requests prejudgment interest on the $1,914,017 from December 1, 2019 (the date by which the last known investor had provided funds) through December 31, 2021, is $146,723. See Dkt. 21-3 ¶ 7. The Court finds that disgorgement in the amount of $1,914,017 along with prejudgment interest of $146,723 is appropriate.

    3.    Civil Penalties

Fifth, the SEC seeks an order imposing civil penalties on defendant C3 for violations of the Securities Act and the Exchange Act. MDJ at 18, 23. Under the Securities Act and the Exchange Act, the amount of a civil penalty should be assessed by a court according to a three-tier system in light of the facts and circumstances of the case. See 15 U.S.C. §§ 77t(d)(2), 78u(d)(3). First tier penalties may be imposed for "each violation" of either Act; second tier penalties are appropriate where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" third tier penalties apply where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, and such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." Id.

Here, the SEC seeks a third-tier civil monetary penalty. MDJ at 24. The SEC seeks a specific, inflation-adjusted statutory amount against C3 of $3,107,727.[1] Id. "Like a permanent injunction, civil penalties are imposed to deter the wrongdoer from similar violations in the future; therefore the factors listed in SEC v. Murphy [] apply." SEC v. Abacus Intern. Holding Corp., No. C 99-02191, 2001 WL 940913, at *5 (N.D.

---

[1] This amount is the inflation-adjusted statutory amount of third-tier civil monetary penalties under the Securities Act and Exchange Act. See 17 C.F.R. § 201.1001(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | November 7, 2022 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

Cal. Aug. 16, 2001). The Court previously determined that defendant C3's conduct satisfies the Murphy factors. Moreover, by failing to appear, defendant C3 not given any indication of the recognition of the wrongfulness of its conduct, nor has it given any assurances against future violations.

Accordingly, the Court finds that civil monetary penalties of $3,107,727 against C3 are appropriate. See, e.g., Baccam, 2017 WL 5952168 at *7 (finding that an "imposition of a third-tier penalty is appropriate to adequately serve the deterrent function of the civil penalty provision") (internal quotations omitted); SEC v. Mizrahi, 2020 WL 6114913 at *4 (finding that defendants' conduct met the statutory criteria for the imposition of a third-tier penalty because defendants "acted with a high degree of scienter by making blatantly false representations to [their] clients.").

### V. CONCLUSION

In accordance with the foregoing, the Court:

(1) **DENIES** the SEC's motion for default judgment as to defendants Steele Smith and Theresa Smith;

(2) **GRANTS** the SEC's motion for default judgment as to defendant C3;

(3) permanently enjoins C3 from future violations of the antifraud provisions of Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, as well as future violations of the registration provisions of Sections 5(a) and (c) of the Securities Act of 1933;

(4) orders the disgorgement of $1,914,017, along with prejudgment interest in the amount of $146,723; and

(5) imposes civil monetary penalties of $3,107,727 against C3.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |