UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                             Not Present

**Proceedings:**          (IN CHAMBERS) - MOTION FOR DEFAULT JUDGMENT (Dkt. 62, filed on June 21, 2024)

## I.      INTRODUCTION

Presently before the Court is plaintiff's motion for default judgment against defendants Steele Clark Smith III ("Steele Smith") and Theresa Smith (collectively, the "Smith Defendants"). The Court finds this motion appropriate for decision without oral argument. See Fed. R. Civ. P. 78; C.D. Cal. Local Rule 7-15. Accordingly, the matter is hereby taken under submission.

On September 28, 2021, plaintiff United States Securities and Exchange Commission ("SEC") filed this action against defendants C3 International, Inc., ("C3"), Steele Smith, and Theresa Smith (collectively, "defendants"). Dkt. 1 ("Compl."). The complaint brings five claims for relief: (1) Fraud in Connection with the Purchase or Sale of Securities, in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5 (against C3 and Steele Smith); (2) Fraud in the Offer or Sale of Securities in violation of Sections 17(a)(1), (2), and (3) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77(q)(a) (against C3 and Steele Smith); (3) Aiding and Abetting Violations of Section 17(a) of the Securities Act (against Theresa Smith); (4) Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder (against Theresa Smith); and (5) Unregistered Offer and Sale of Securities Violations of Sections 5(a) and 5(c) of the Securities Act (against all defendants). Id. ¶¶ 66-75.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|----------|-------------------------|------|----------------|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

On January 7, 2022, after having received no response or answer from defendants, the SEC requested the Clerk of the Court enter default against defendants pursuant to Federal Rule of Civil Procedure ("Rule") 55(a). Fed. R. Civ. P. 55(a). Dkt. 17. Pursuant to the SEC's request, the Clerk entered default on January 7, 2022. Dkt. 18 ("Entry of Default").

On March 24, 2022, the Court ordered the SEC to show cause as to why this action should not be dismissed for lack of prosecution. Dkt. 19. On March 29, 2022, the SEC filed a response. Dkt. 20 ("Response"). On May 11, 2022, the SEC filed a motion for default judgment as to all defendants. Dkt. 21 ("MDJ").

On July 11, 2022, the Court held a hearing. Defendants Steele Smith and Theresa Smith appeared on behalf of themselves. During the hearing, the Smith Defendants requested time to contest the SEC's motion for default judgment and to obtain counsel. The Court withheld entering default judgment contingent on the defendants filing responsive pleadings. Dkt. 25.

On September 4, 2022, the Smith Defendants filed a memorandum in opposition to the plaintiff's motion for default judgment that denied the factual allegations in plaintiff's complaint. Dkt. 27.

On September 9, 2022, the Court acknowledged receipt of the Smith Defendants' "answer" and directed it be lodged as a "responsive pleading." Dkt. 29. The Court then directed defendants to file a brief setting forth why entry should be put aside. Id.

On September 30, 2022, the Smith Defendants filed their supplemental memorandum. Dkts. 33, 36-1.

On October 7, 2022, plaintiff filed a reply restating its request for default judgment as to all three defendants. Dkt. 37.

On October 26, 2022, the Smith Defendants filed a "further supplemental memorandum" in opposition to plaintiff's motion for default judgment. Dkt. 38.

On November 7, 2022, the Court granted the SEC's motion for default judgement as to defendant C3 but denied the SEC's motion for default judgement as to the Smith Defendants. Dkt. 39.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

On January 9, 2023, the Court held a status conference. No appearance was made by either of the Smith Defendants, nor was any appearance made on their behalf. Dkt. 41. In response, the Court issued the Smith Defendants an order to show cause by January 23, 2023, as to why default should not be entered against them. Dkt. 41.

On January 23, 2023, the Smith Defendants filed a joint response to the Court's order to show cause, requesting a new status conference date. Dkt. 42. On April 10, 2023, the Court held a new status conference and denied the Smith Defendants' oral motion to dismiss this action. Dkt. 44.

On February 26, 2024, the Court held a status conference regarding settlement at which no appearance was made by or on behalf of either of the Smith Defendants. Dkt. 56. Accordingly, the Court again issued the Smith Defendants an order to show cause by March 11, 2024, as to why their answer should not be stricken and why default should not be entered against them. Id.

On February 26, 2024, the Smith Defendants sent the Court an email in response to the Court's order to show cause. See Dkt. 57. On February 27, 2024, the Court ordered the defendants to file a status report regarding settlement, if any, with the SEC by March 11, 2024. Id. Failure to do so would result in their answer being stricken. Id. It appears that, to date, the Smith Defendants have not filed any response and/or served a status report regarding settlement on the SEC.

On April 16, 2024, the Court ordered the Clerk to enter default against the Smith Defendants and directed the SEC either to file an application for the clerk to enter default judgement or to file a motion for entry of default judgement as to these two defendants. Dkt. 59. On April 17, 2024, the Clerk entered default against the Smith Defendants. Dkt. 59.

On June 21, 2024, the SEC filed the instant motion for default judgement against the Smith Defendants. Dkt. 62 ("Mot.").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

## II.    BACKGROUND

Defendant C3 is a private, California-based corporation, formed in November 2011, with its purported principal place of business in Garden Grove, California. Id. ¶ 10. Defendant Steele Smith is a current resident of Garden Grove, California, and is listed as the CEO, Secretary, CFO, and Director of C3, according to the certificate filed with the California Secretary of State. Id. ¶ 11. Defendant Theresa Smith, wife of Steele Smith, is a current resident of Garden Grove, California, and is the co-founder and President of C3. Id. ¶ 12. Additionally, in October 2010, Steele Smith and Theresa Smith formed the related entity C3 Patients Association ("C3PA"), a nonprofit member association organized for the purpose of providing members with medical marijuana. From approximately 2010 to 2015, C3PA sold cannabis products and billed insurance companies for reimbursement. Id. ¶ 13.

The SEC's complaint alleges that from approximately October 2011 through November 2019, defendants raised approximately $2 million dollars from more than 40 investors by selling stock in C3 through Steele Smith's material misrepresentations and omissions regarding the company's business and its cannabis pill called Idrasil. Compl. ¶ 5. C3's website claims that Idrasil was either patented or patent pending, but Steele Smith had only filed a provisional patent application. Id. ¶¶ 18-21. Steele Smith and C3 stated in business summaries that C3 would use investment proceeds for business purposes, but Steele Smith and Theresa Smith diverted a substantial portion of those proceeds for their personal living expenses. Id. ¶¶ 25-28. Steele Smith and C3 made statements disclosing Steele Smith's background and history but omitted that he was a convicted felon; he was convicted of conspiracy to manufacture at least 1,000 marijuana plants in 2012 in United States v. Smith, 8:07-cr-00264-CJC (C.D. Cal.). Compl. ¶¶ 30-31.

Moreover, the complaint alleges that Steele Smith and C3 represented that Idrasil was reimbursable by most health insurance companies in California, but fewer than half of insurance companies accepted Idrasil for payment. Id. ¶¶ 32-33. Further, Steele Smith and C3 represented that pharmaceutical companies had shown interest in purchasing C3 and that C3 would, according to Smith's financial projections, achieve at least $4.6 million in gross revenue the next year. However, no big pharmaceutical companies had responded to Steele Smith and C3PA had never made more than $57,000 in a single year

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                     'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

from Idrasil. Id. ¶¶ 36-40. When questioned by investors about when they would receive money from C3, Steele Smith represented that C3 had a building in escrow and that as soon as the deal closed, he would have the funds to buy out the investors. However, C3 never had a building in escrow nor enough cash to go into escrow for the types of buildings that Steele Smith described. Id. ¶¶ 41-43.

Further, the SEC's complaint alleges that Theresa Smith aided and abetted Steele Smith's and C3's securities fraud violations because she was a co-founder of C3, was C3's president, and managed the day-to-day operations of C3 and C3PA, including the companies' bank accounts and expenses. Id. ¶¶ 45-46.

Last, the SEC's complaint alleges that defendants offered and sold C3 stock without filing a registration statement with the SEC or otherwise satisfying an exemption. Id. ¶ 8. Beginning in at least October 2011, and continuing through at least November 2019, defendants offered and sold C3 stock to investors. However, defendants never filed a registration statement with the SEC for the offer and sale of the C3 securities. Id. ¶¶ 47, 50.

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the plaintiff does not seek a sum certain, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55.

As a general rule, cases should be decided on the merits as opposed to by default, and, therefore, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." Judge William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial ¶ 6:11 (The Rutter Group 2015) (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). Granting or denying a motion for default judgment is a matter within the court's discretion. Elektra Entm't Grp., Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D. Cal. 2005); see also Sony Music Ent. Inc. v. Elias, No. CV03-6387DT(RCX), 2004 WL 141959, at *3 (C.D. Cal. Jan. 20, 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong policy favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986); see also Elektra, 226 F.R.D. at 392.

"Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2." Harman Int'l Indus., Inc. v. Pro Sound Gear, Inc., No. 2:17-cv-06650-ODW-FFM, 2018 WL 1989518, at *1 (C.D. Cal. Apr. 24, 2018). Accordingly, when an applicant seeks a default judgment from the Court, the movant must submit a declaration specifying: "(a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) That notice has been served on the defaulting party, if required by [Federal Rule of Civil Procedure] 55(b)(2)." See C.D. Cal. L.R. 55-1. Under Local Rule 55-2, "where an application for default judgment seeks unliquidated damages, the party seeking entry of the default judgment is obligated to serve notice of the application on the defaulting party regardless of whether the latter has appeared in the action." Halicki v. Monfort, No. 2:08-cv-00351-PSG-JTL, 2009 WL 10672966, at *2 (C.D. Cal. Nov. 19, 2009) (citing C.D. Cal. L.R. 55-2).

## IV.   DISCUSSION

### A.   Procedural Requirements

To satisfy the procedural requirements for entry of default judgment, the plaintiff must follow the "requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2." Harman Int'l Indus., 2018 WL 1989518, at *1. Here, the procedural requirements for default judgment are satisfied because (1) the SEC served Steele Smith and Theresa Smith with the summons and complaint; (2) the clerk entered default against Steele Smith and Theresa Smith; and (3) the SEC submitted a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|----------|-------------------------|------|---------------|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

declaration establishing that Steele Smith and Theresa Smith are not minors or incompetent persons, and are not in military service, such that the Servicemembers Civil Relief Act does not apply. Dkt. 62-2 ("Declaration of SEC's Counsel Derek S. Bentsen") ¶¶ 1-4. Notice of the SEC's motion for default judgment was properly served on defendants pursuant to Local Rule 55-2. Dkt. 62 at 26-27 ("Proof of Service").

Accordingly, the SEC has satisfied the procedural requirements for default judgment under the Federal and Local Rules. The Court now proceeds to the SEC's motion for default judgment.

### B.    Application of the Eitel Factors

The Court finds that the Eitel factors weigh in favor of entering default judgment against the Smith Defendants.

#### 1.    Risk of Prejudice to Plaintiff

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); see also Eitel, 782 F.2d at 1471-72. Courts favor entry of default judgment when, absent entry of default judgment, plaintiffs "will likely be without other recourse for recovery." PepsiCo, 238 F. Supp. 2d at 1175.

Here, in the absence of entry of default judgment, the SEC "would have no way to enforce the Securities Act or the Exchange Act against defaulting defendants." SEC v. Pedras, No. CV 13–7932 GAF (MRWx), 2014 WL 12597332, at *4 (C.D. Cal. Apr. 16, 2014). The Smith Defendants failed to appear at the January 9, 2023, hearing as well as the February 26, 2024, hearing. Dkts. 41, 56. To date, the Smith Defendants have failed to respond to, or act upon, the Court's February 27, 2024, order to file a status report regarding settlement with the SEC. See Dkt. 56. The Court-imposed deadline to do so by March 11, 2024, has since passed. Id. By way of excuse, the Smith Defendants have repeatedly claimed lack of notice despite proof of service being filed. This pattern reinforces the Court's view that the Smith Defendants have engaged in intentional conduct to avoid adjudication of the issues in this case. Because the Smith Defendants have elected not to take further part in this litigation, the Commission will be unable to fulfill its mandate to protect the investing public in the absence of a default judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

SEC v. Lion Capital Management, No. CV 12–05166 WHA, 2013 WL 5945081 (N.D. Cal. Nov. 1, 2013).

Accordingly, the first Eitel factor weighs in favor of entering default judgment.

    2.    Sufficiency of the Complaint and the Likelihood of Success on the Merits

Courts often consider the second and third Eitel factors together. See PepsiCo, 238 F. Supp. 2d. at 1175; HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 941 (D. Ariz. 2013). The second and third Eitel factors assess the substantive merits of the movant's claims and the sufficiency of its pleadings, which "require that a [movant] state a claim on which [it] may recover." PepsiCo, 238 F. Supp. 2d at 1177 (quotation marks omitted); see also Danning v. Lavine, 572 F. Supp. 2d 1386, 1388 (9th Cir. 1978) (stating that the issue is whether the allegations in the pleading state a claim upon which plaintiff can recover). For the purposes of default judgment, all well-pleaded allegations in the complaint, except for those relating to damages, are assumed to be true. Geddes v. United Fin. Grp., 559 F. 2d 557, 560 (9th Cir. 1977). However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F. 2d 1261, 1267 (9th Cir. 1992).

The SEC brings claims against Steele Smith for (1) violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and (2) violation of Section 17(a) of the Securities Act. The SEC brings additional claims against Theresa Smith for (3) aiding and abetting the violations of Section 17(a) of the Securities Act and (4) aiding and abetting the violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Finally, the SEC brings a claim against each of the Smith Defendants for (5) violations of Sections 5(a) and 5(c) of the Securities Act. Compl. ¶¶ 66-75. The Court proceeds to analyze the sufficiency of the complaint and likelihood of success on each of the claims below.

    a.  Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder make it unlawful, "in the offer or sale of securities" or "in connection with the purchase or sale of a security," to engage in any fraudulent conduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

15 U.S.C. §§ 77b(a)(1). To establish a violation of Section 17(a)(2) of the Securities Act, the SEC must prove, in connection with the offer or sale of a security: (1) a material misstatement or omission; (2) made with at least negligence; (3) the receipt of money or property by means thereof; (4) by means of interstate commerce. See SEC v. GLT Dain Rauscher, Inc., 254 F.3d 852 at 856 (9th Cir. 2001). Similarly, to establish a violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder, the SEC must show that a defendant, in connection with the purchase or sale of a security: (1) made a material misrepresentation or omission; (2) with scienter; (3) in interstate commerce. See 17 C.F.R. § 240.10b-5(b); see also SEC v. Platforms Wireless Intern. Corp., 617 F.3d 1072, 1092 (9th Cir. 2010).

Additionally, Section 17(a)(1) of the Securities Act prohibits any person, in the offer or sale of any security, from employing any device, scheme, or artifice to defraud, and Section 17(a)(3) prohibits any person from engaging in any transaction, practice, or course of business which operates, or would operate, as a fraud or deceit upon the purchaser. 15 U.S.C. §§ 77q(a)(1), (3). Likewise, Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder make it unlawful for any person to employ, in connection with the purchase or sale of any security, any device, scheme, or artifice to defraud, or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. 17 C.F.R. § 240.10b-5(a), (c).

The SEC's allegations are sufficient to establish that Steele Smith violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

First, Steele Smith's conduct involved the sale of securities. For the purposes of the Securities Act, stocks are considered "securities." See 15 U.S.C. § 77(b)(1). Here, Steele Smith offered to sell to investors "securities" within the meaning of the Securities and Exchange Act.

Second, Steele Smith's conduct satisfies the material misrepresentation element under the Securities and Exchange Acts. Steele Smith made numerous misrepresentations to investors including: (1) representing that C3 had a patent (or a pending one) for Idrasil when only an application for a provisional patent had been filed, compl. ¶¶ 18-21; (2) representing that investor funds would be used for business purposes, but instead using a portion of the funds for personal expenses, id. ¶ 25; (3) representing that most health

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

insurance companies would pay for Idrasil when, in fact, most would not pay, id. ¶¶ 32-34; and (4) representing that investors would receive returns on their investments through dividends until a large pharmaceutical company purchased C3, but no dividends were paid and there were no prospective buyers of C3. Id. ¶¶ 36-37.

Steele Smith's misrepresentations were material. A fact is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of the information made available. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976). Here, reasonable investors would have wanted to know that Idrasil did not have a patent, that Steele Smith misused investors' funds, that C3 did not have prospective purchasers, and that most health insurance companies would not pay for Idrasil.

Third, Steele Smith acted with scienter. As was previously discussed, a violation of Section 17(a)(2) of the Securities Act requires only negligence. A violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, however, requires at least "knowing or reckless conduct," without a showing of "willful intent to defraud." Vernazza v SEC, 327 F.3d 851, 860 (9th Cir. 2003). Reckless conduct is that which demonstrates an extreme departure from the standards of ordinary care and presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it. Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir. 1990). The Court finds that, for the purposes of default judgment as to Steele Smith, the SEC has sufficiently alleged that Steele Smith knew, or was reckless in not knowing, that C3's offering documents, website, and investor communications contained false and misleading statements.

Last, Steele Smith's actions involved means or instruments of interstate commerce because Steele Smith solicited investors from Oregon, Tennessee, and Maryland. Compl. ¶ 47. Accordingly, the Court finds the SEC has sufficiently pled, and is likely to succeed on, its claims against Steele Smith for fraud under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act.

> b. Aiding and Abetting Violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

Section 20(e) of the Exchange Act provides that "any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of this chapter, or of any rule or regulation issued under this chapter, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided." 15 U.S.C. § 78t. Section 15(b) of the Securities Act provides substantially the same grounds for liability for aiding and abetting violations of the Securities Act. 15 U.S.C. § 77o(b).

Here, the SEC sufficiently alleges that Theresa Smith "knowingly or recklessly provided substantial assistance to Steele Smith and C3's violations" of both Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act. Compl. ¶¶ 65, 69. It specifically alleges that:

> [Theresa Smith] managed the day to day operations of C3 and C3PA, including managing their bank accounts and paying the companies' expenses. She was therefore financially responsible for all the items necessary to reach investors and defraud them, and collected the fruits of that fraud. She paid for and reviewed the company websites and investor materials which made false statements to investors. She was aware of the falsity (or reckless in not knowing it) of at least some of the statements Steele Smith and C3 provided to investors. For example, she reviewed documents where Steele told investors that their money would be used for business purposes while she, together with Steele, actively misappropriated investor funds for their personal benefit.

Id. Accordingly, the Court finds that the SEC has sufficiently pled, and is likely to succeed on, its claims against Theresa Smith for aiding and abetting violations of both Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act.

c. Section 5 of the Securities Act

Section 5 of the Securities Act makes it unlawful for any person, directly or indirectly, to offer to sell or buy a security by means of interstate commerce without a registration having been filed or in effect. 15 U.S.C. §§ 77e(a), (c). To establish a violation, the SEC must therefore show that the defendants offered or sold unregistered securities in interstate commerce. SEC v. Murphy, 626 F.2d 633, 640-641 (9th Cir. 1980). Section 5 liability requires a defendant to have undertaken a significant role in the transaction, that is, when one is both a necessary participant and a substantial factor in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

sales transaction.  SEC v Phan, 500 F.3d 895, 906 (9th Cir. 2007); see also Murphy, 626 F.2d at 648, 652.  The Ninth Circuit has interpreted this to mean that but for the defendant's participation, the transaction would not have taken place.  See Murphy, 626 F.2d 633 at 651-652.

Here, the Smith Defendants offered and sold C3 stock without filing a registration statement with the SEC.  Id. ¶ 8.  Steele Smith and Theresa Smith directly "offered and sold C3 stock to investors."  Id. ¶ 14.  Therefore, the Court finds that their conduct meets the "necessary participant" and "substantial factor" elements of a Section 5 violation.

Accordingly, the second and third Eitel factors weigh in favor of entering default judgment.

### 3.    Sum of Money at Stake in the Action

Pursuant to the fourth Eitel factor, the Court balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct."  PepsiCo, 238 F. Supp. 2d at 1176; see also Eitel, 782 F.2d at 1471-72.  "This determination requires a comparison of the recovery sought and the nature of the defendant's conduct to determine whether the remedy is appropriate."  United States v. Broaster Kitchen, Inc., No 2:14-cv-09421-MMM-PJW, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015); see also Walters v. Statewide Concrete Barrier, Inc., No. 3:04-cv-02559-JSW, 2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted.")

Here, the SEC seeks an order for disgorgement of $1,914,017 misappropriated from investors along with $447,859 in prejudgment interest.  See Dkt. 62-3 ("Declaration of SEC's Accountant and Certified Fraud Examiner Margaret Mary Vizzi") ¶¶ 4, 6.  The Court finds that the amount of money sought by the SEC is proportional in relation to the Smith Defendants' unlawful conduct.  The Smith Defendants' conduct involved serious violations of federal securities law, and the Court may exercise its equitable powers to require a defendant in an SEC enforcement action to disgorge his ill-gotten gains.  SEC v. Rind, 991 F.2d 1486, 1492 (9th Cir. 1993).

Accordingly, the Court finds that the fourth Eitel factor weighs in favor of entering default judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

### 4.      Possibility of Dispute Concerning a Material Fact

The fifth Eitel factor considers the possibility that material facts are in dispute. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471-72. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, 238 F. Supp. 2d at 1177.

Here, the SEC has "filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the court clerk entered default against" defendant. Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Therefore, no dispute has been raised regarding the material averments of the complaint, and the likelihood that any genuine issue may exist is, at best, remote." Id.

Accordingly, the fifth Eitel factor weighs in favor of granting the motion for default judgment.

### 5.      Possibility of Excusable Neglect

The sixth Eitel factor considers whether the defendant's default may have been the product of excusable neglect. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471-72.

Here, the possibility of excusable neglect is remote. Each of the Smith Defendants was properly served with the complaint and summons. Dkts. 15-16. Additionally, notice of the SEC's motion for default judgment was properly served pursuant to Local Rule 55-2. Dkt. 62-2 ¶ 5. Furthermore, the Smith Defendants have repeatedly failed to appear in this action. They failed to appear at the January 9, 2023, hearing as well as the February 26, 2024, hearing. Dkts. 41, 56. They failed to respond to, or act upon, the Court's February 27, 2024, order to file a status report regarding settlement with the SEC. See Dkt. 56. They also were warned that failure to do so by the Court-imposed deadline of March 11, 2024, would result in their answer being stricken. Id. The Smith Defendants have repeatedly claimed lack of notice despite proof of service being filed. As noted above, this pattern reinforces the Court's view that the Smith Defendants have engaged in intentional conduct to avoid adjudication of the issues in this case.

Accordingly, the sixth Eitel factor weighs in favor of granting the motion for default judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                 **'O'**

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

      6.     <u>Policy Favoring Decisions on the Merits</u>

Under the seventh <u>Eitel</u> factor, the Court considers the strong policy favoring decisions on the merits.  See <u>Eitel</u>, 782 F.2d at 1472.  However, the mere existence of Fed. R. Civ. P. 55(b) suggests that the seventh <u>Eitel</u> factor is not dispositive.  <u>PepsiCo</u>, 238 F. Supp. 2d at 1177.  When a defendant's failure to appear and respond "makes a decision on the merits impractical, if not impossible," default judgment is appropriate. <u>Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Black Diamond Contracting Grp., Inc.</u>, No. S8:17-cv-00770-JLSDFM, 2017 WL 6496434, at *5 (C.D. Cal. Dec. 18, 2017). Because the Smith Defendants' failure to appear or otherwise respond makes a decision on the merits in this case impractical, if not impossible, the seventh <u>Eitel</u> factor does not preclude entry of default judgment.

      7.     <u>Conclusion Regarding the Eitel Factors</u>

Apart from the policy favoring decisions on the merits, all the remaining <u>Eitel</u> factors weigh in favor of default judgment, including the merits of the SEC's claims.  See <u>Federal Nat. Mortg. Ass'n v. George</u>, No. 5:14-cv-01679-VAP-SP, 2015 WL 4127958, *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important <u>Eitel</u> factors.") (citation omitted).  Therefore, weighing all the <u>Eitel</u> factors, the Court finds that entry of default judgment against the Smith Defendants is appropriate.

    **C.**    **Relief Sought by the SEC**

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (quotation marks omitted).  The "[p]laintiff has the burden of proving damages through testimony or written affidavit."  See <u>Bd. of Trustees of the Boilermaker Vacation Tr. V. Skelly, Inc.</u>, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).  Moreover, the movant seeking default judgment must prove the damages sought, and although the Court may hold an evidentiary hearing to determine the amount of damages, no hearing is necessary "if the amount of damages can be determined from definite figures contained in the documentary evidence or in detailed affidavits."  <u>Bravado Int'l Grp. Merch. Servs., Inc. v. Quintero</u>, No. 2:13-cv-00693-SVW-SS, 2013 WL 12126750, at *4 (C.D. Cal. Nov. 27, 2013) (citation omitted).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

Here, the SEC seeks several forms of relief. The Court addresses each form of requested relief in turn.

      1.     <u>Injunctive Relief</u>

The SEC seeks a judgment permanently enjoining each of the Smith Defendants from future violations of the antifraud provisions of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, as well as future violations of the registration provisions of Sections 5(a) and (c) of the Securities Act. Mot. at 18. To obtain an injunction, the SEC must establish that there is a reasonable likelihood of future violations. See <u>SEC v. Murphy</u>, 626 F.2d 633, 655 (9th Cir. 1980) ("The existence of past violations may give rise to an inference that there will be future violations."). "In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations, and it considers factors such as:

    (1) the degree of scienter involved;

    (2) the isolated or recurrent nature of the infraction;

    (3) the defendant's recognition of the wrongful nature of his conduct;

    (4) the likelihood, because of defendant's professional occupation, that future violations might occur; and

    (5) the sincerity of his assurances against future violations."

<u>SEC v. Murphy</u>, 626 F.2d 633, 655 (9th Cir. 1980). The Court has previously found that the Smith Defendants' conduct was an ongoing fraud perpetuated over many years. Further, the Smith Defendants' failure to appear precludes any assurances against future violations and is evidence that they do not recognize the wrongful nature of their conduct. Therefore, the Court finds that an injunction permanently enjoining the Smith Defendants from future violations of the antifraud provisions of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, as well as future violations of the registration provisions of Sections 5(a) and (c) of the Securities Act is appropriate. See <u>S.E.C. v. Baccam</u>, 2017 WL 5952168, at *9 (awarding injunctive relief by default, noting that the defendant "has not given any assurances against future violations, but to the contrary, declined to appear in this case").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

### 2.    Disgorgement

Second, the SEC seeks disgorgement of the investors' lost funds. Mot. at 18. The SEC has authority to seek disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims." Liu v. SEC, 140 S. Ct. 1936, 1940 (2020). Additionally, "[d]isgorgement need be 'only a reasonable approximation of profits causally connected to the violation.'" Platforms Wireless Int'l Corp., 617 F.3d at 1096 (quoting S.E.C. v. First Pac. Bancorp, 142 F.3d 1186, 1191 (9th Cir. 1998)). Here, the SEC's calculation of the appropriate disgorgement is premised upon the evidence accumulated by SEC accountant and fraud examiner Margaret Mary Vizzi. Dkt. 62-3. The SEC has alleged that defendants raised $1,914,017 through the fraudulent activities. Id. ¶ 4. The SEC's evidence thus presents a "reasonable approximation" of defendants' fraudulent activities.

In conjunction with its request for disgorgement, plaintiff requests prejudgment interest. Mot. at 23. Prejudgment interest may be awarded to ensure that the wrongdoer does not profit from the illegal activity. SEC v. Cross Financial Services, Inc., 908 F. Supp. 718, 734 (C.D. Cal. 1995). Indeed, an award of prejudgment interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity. SEC v. Moran, 944 F. Supp. 286, 295 (S.D.N.Y. 1996). The SEC's requested prejudgment interest on the $1,914,017 from December 1, 2019 (the date by which the last known investor had provided funds) through March 31, 2024, is $447,859. See Dkt. 62-5. The Court finds that disgorgement in the amount of $1,914,017 along with prejudgment interest of $447,859 is appropriate.

### 3.    Civil Penalties

Fifth, the SEC seeks an order imposing civil penalties on the Smith Defendants for violations of the Securities Act and the Exchange Act. Mot. at 18, 23. Under the Securities Act and the Exchange Act, the amount of a civil penalty should be assessed by a court according to a three-tier system in light of the facts and circumstances of the case. See 15 U.S.C. §§ 77t(d)(2), 78u(d)(3). First tier penalties may be imposed for "each violation" of either Act; second tier penalties are appropriate where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" third tier penalties apply where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, and such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
|---|---|---|---|
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." Id.

Here, the SEC seeks a third-tier civil monetary penalty. Mot. at 24. The SEC seeks a specific, inflation-adjusted statutory amount against the Smith Defendants, respectively, of $621,549.[1] Id. "Like a permanent injunction, civil penalties are imposed to deter the wrongdoer from similar violations in the future; therefore the factors listed in SEC v. Murphy [] apply." SEC v. Abacus Intern. Holding Corp., No. C 99-02191, 2001 WL 940913, at *5 (N.D. Cal. Aug. 16, 2001). The Court previously determined that the Smith Defendants' conduct satisfies the Murphy factors. Moreover, by failing to appear, the Smith Defendants' have not given any indication of the recognition of the wrongfulness of their conduct, nor have they given any assurances against future violations.

Accordingly, the Court finds that civil monetary penalties of $621,549 against the Smith Defendants, respectively, are appropriate. See, e.g., Baccam, 2017 WL 5952168 at *7 (finding that an "imposition of a third-tier penalty is appropriate to adequately serve the deterrent function of the civil penalty provision") (internal quotations omitted); SEC v. Mizrahi, 2020 WL 6114913 at *4 (finding that defendants' conduct met the statutory criteria for the imposition of a third-tier penalty because defendants "acted with a high degree of scienter by making blatantly false representations to [their] clients.").

**V.      CONCLUSION**

In accordance with the foregoing, the Court:

(1) **GRANTS** the SEC's motion for default judgment as to defendants Steele Smith and Theresa Smith;

(2) permanently enjoins Steele Smith and Theresa Smith from future violations of the antifraud provisions of Section 17(a) of the Securities Act of 1933 and Section

---

[1] This amount is the inflation-adjusted statutory amount of third-tier civil monetary penalties under the Securities Act and Exchange Act. See 17 C.F.R. § 201.1001(b). See U.S. Sec. Exch. Comm'n, Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (2022), https://www.sec.gov/files/civil-penalties-inflation-adjustments_1_1.pdf.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-01586-CAS (PDx) | Date | July 17, 2024 |
| Title | U.S. SECURITIES AND EXCHANGE COMMISSION v. C3 INTERNATIONAL, INC., ET AL. | | |

10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, as well as future violations of the registration provisions of Sections 5(a) and (c) of the Securities Act of 1933;

(3) orders the disgorgement of $1,914,017, along with prejudgment interest in the amount of $447,859; and

(4) imposes civil monetary penalties of $621,549 against each of the Smith Defendants.

IT IS SO ORDERED.

|  |  | 00 | : | 00 |
|---|---|---|---|---|
| Initials of Preparer | | | CMJ | |